## Harris v. Harris
*[Cite as 5 AOA 105]*

*Case No. 89-J-37*
*Jefferson County, (7th)*
*Decided July 5, 1990*

*Gary M. Stern, Bank One Building, #1200, Steubenville, Ohio 43952, for Plaintiff-Appellee.*

*Dominick E. Olivito, Jr., 606 Sinclair Building, Steubenville, Ohio 43952, for Defendant-Appellant.*

FORD, J.

Appellee, Robert Harris, and appellant, Delores Harris, were divorced in 1980, the appellant being given custody of the parties' only child, Angela (who was then four years of age.) Appellee was granted, and exercised, weekend and summer visitation.

On August 10, 1989, appellee filed a moti on for a change of custody of the child, now thirteen years of age, based on the child's election to reside with him in Steubenville, rather than in West Virginia with her mother. A hearing was held by the Jefferson County Court of Common Pleas, on August 21, 1989.

During this hearing, appellee was questioned about an alleged conviction for driving while intoxicated, on January 2, 1989. These charges apparently stemmed from an evening appellee spent drinking at home. He was arrested after a fateful decision to drive to the store to purchase cigarettes. Appellee responded that the charges brought against him were reduced to reckless operation of a motor vehicle (although, by his own admission, appellee had a blood alcohol level of approximately .21%.)

Appellee was also asked about his possible use of controlled substances:

"Q. Now, with regards to your cocaine usage, when did you stop using cocaine?

"A. Cocaine is something that gives me terrible headaches and I haven't fooled around with that in a long time.

"Q. What is a long time?

"A. A year, year-and-a-half."

Conversely, appellant alleged that she had talked to people who stated that appellee had used cocaine during his summer visitation period with his daughter. (Appellant did not have personal knowledge however, of any such usage of the drug by appellee.)

Further, appellee was questioned about an incident of child molestation which occurred four years prior to the hearing. Apparently, the girl was molested by the boyfriend of appellee's sister. This incident, according to the recollections of all parties, was investigated by the Department of Human Services, but the matter was dropped (allegedly because of the absence of penetration by the assailant.) There is no testimony that appellee either allowed this incident to occur or condoned it and this particular boyfriend is no longer a part of the family circle.

Both parties testified to their belief that their home was the best possible, environment

for Angela. Angela Harris herself informed the trial court (in camera, in an untranscripted portion of the trial court record) that she elected to live, in Ohio, with her father.

At the close of the August 21 hearing, the trial court granted temporary custody of Angela Harris to appellee. The court also instructed appellee that he was to take a blood test, to determine whether or not he was using cocaine. The trial court record indicates that such a test was taken and demonstrates no cocaine use by the appellee.

A second hearing was held, in this case, on October 2, 1989. Appellant continued to object to any change of custody, alleging that Angela was living primarily with various relatives, rather than appellee. Appellee, however, stated that the child was living with him, save for occasional periods, where, due to his work schedule, she would stay with his sister.

At the close of the hearing, the trial court granted appellee's motion for a change of custody. Appellant now timely appeals and raised the following assignments of error:

"1. The order modifying custody of Angela Denise Harris must be vacated for reason that the trial court did not have jurisdiction to modify custody because plaintiff-appellee failed to file the mandatory custody affidavit pursuant to R.C. 3109.27.

"2. The trial court erred by exercising jurisdiction to determine custody.

"3. The trial court erred and abused its discretion in ordering a modification of custody.

"4. Plaintiff-Appellee failed to sustain the burden of proof required pursuant to R.C. 3109.04(B)(1)(C). Therefore, the trial court erred in ordering a modification of custody."

Appellant's first two assignments of error challenge various aspects of the trial court's exercise of Jurisdiction in the case *sub judice.* Appellant first contends that the trial court erred in exercising Jurisdiction over this case because appellee failed to file a mandatory custody affidavit, pursuant to R.C. 3109.27. This statute states, in pertinent part:

"(A) Every party in a custody proceeding, in his first pleading or in affidavit attached to that pleading, shall give information under oath as to the child's present address, the places where the child has lived within the past five years, and the names and present addresses of the persons with whom the child has lived. In this pleading or in

affidavit every party shall also include all of the following information:

"***

"(2) Whether the party has information of any custody proceeding concerning the custody of the same child in this or any other state; ***."

As the excerpted portion of this statute, which is Ohio's version of the Uniform Child Custody Jurisdiction Act indicates, the purpose of the custody affidavit is to ensure that the child is not made the rope in a tug of war between different court proceedings. The Ohio Supreme Court stated, in *Pasqualone v. Pasqualone* (1980), 63 Ohio St. 2d 96, that "the language of this provision is specific and mandatory in nature." *Pasqualone, supra,* at 99.

Appellee acknowledges the validity of *Pasqualone;* however, he attempts to distinguish the case *sub judice,* by referring to *Loetz v. Loetz* (1980), 63 Ohio St. 2d I. In *Loetz, supra,* the Ohio Supreme Court stated that "[t]he court in which a decree of divorce is originally rendered retains continuing jurisdiction over matters retaining to the custody, care, and support of the minor children of the parties." *Id.* at 2. Appellee argues that, while the movant, in his or her first pleading, must provide a custody affidavit, pursuant to R.C. 3109.27, this requirement is obviated in subsequent proceedings, concerning the minor children of the parties, over which the court already has jurisdiction.

This court has considered an issue very much on point to that in the case *sub judice* in *Griesinger v. Griesinger* (Sept. 4, 1986), Jefferson App. No. 86-J-26, unreported. In *Griesinger, supra,* we noted that the Ohio Supreme Court both qualified and limited the applicability of *Pasqualone* in *In re Palmer* (1984), 12 Ohio St. 3d 194. Appellant, in *Palmer, supra,* contended that the appellee's failure to file the R.C. 3109.27 custody affidavit nullified the court's jurisdiction. The court, however, found that "[t]he purpose of the Act is to avoid jurisdictional competition and conflict with courts of other jurisdictions *** so the child *** in question will not be caught in a judicial tug of war between different jurisdictions." *Id.* at 196, quoted in *Griesinger,* at 2. (Emphasis deleted.) In *Palmer,* however, the court felt that the purpose of R.C. 3109.27 would be defeated if the statute could be used to create a jurisdictional conflict between probate and juvenile courts of the same county. "Such a rule," *Griesinger* noted, "has even more application herein as plaintiff is attempting to raise a juris-

dictional conflict between successive entries by the same court." *Id.* at 2.

The rationale expressed in *Griesinger* is still valid. The proceedings instituted in this case were simply successor proceedings to those already commenced in Jefferson County Court of Common Pleas. As the assignment of error has already correctly involved the jurisdiction of the trial court *ab initio,* by filing the custody affidavit at the commencement of the divorce proceedings, this court will not contravene the purpose of R.C. 3109.27 by using that statute to divest the lower court of jurisdiction in the subsequent change of custody proceedings.

Appellant's first assignment is without merit.

In Appellant's second assignment of error, she asserts that the trial court was without jurisdiction to determine custody, as the requirements of R.C. 3109.22 were not satisfied. In pertinent part, this statute states:

"(A ) No court of this state having jurisdiction to determine the custody of the child shall exercise that jurisdiction unless one of the following applies:

'(1)The state is the home state of the child at the time of the commencement of the proceeding ***.

'2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state ***.

'(3) The child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child ***.

'(4)It appears that no other state would have jurisdiction under prerequisites substantially in accordance with (A)(1)(2) or (3) ***."

Appellant asserts that West Virginia is the child's home state, the child was neither abandoned nor was there any emergency that arose due to mistreatment or abuse, and West Virginia would have jurisdiction. Appellant further contends that "substantial evidence concerning the child's present or future care, protection, training and personal relationships is available in Ohio, was not demonstrated by the movant at hearing."

Appellant 's argument is contrary to the language of R.C. 3109.22. Under the provisions of R.C. 3109.22(A)(2), the court is allowed to exercise jurisdiction over this matter because one of the parties, the appellee, has a significant connection with this state. (Appellee is an Ohio resident.) See, *Willis v. Willis* (1985), 25 Ohio Misc. 2d I. As a result, the trial court in this case was justified in exercising jurisdiction over this case.

As a result, appellant's second assignment lacks merit.

In her third assignment of error, appellant argues that the trial court abused its discretion in ordering a modification of custody.

"The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Steiner v. Custer* (1940), 137 Ohio St. 448; *Conner v. Conner* (1959), 170' Ohio St. 85; *Chester Township v. Geauga Co. Budget Comm.* (1976), 48 Ohio St. 2d 372." *State v. Adams* (1980), 62 Ohio St. 2d 151, 157-158. Accord *Blakemore v. Blakemore* (1983), 5 Ohio St. 3d 217.

Appellant bases her contentions on "admitted cocaine use (by the appellee) , arrests for DUI, a largely unsupervised Steubenville household environment, sexual molestation charges and counseling for emotional and behavioral problems by the minor child." Further, appellant asserts that the trial court abused its discretion in failing to order a home study, medical, psychological, and psychiatric evaluations" before granting the change of custody.

R.C. 3109.04(A) states that "[t]he court may allow any child who is twelve years of age or older to choose *** the parent with whom the child is to live, unless the court finds that the parent so selected is unfit *** or unless the court finds *** that it would not be in the best interest of the child to have the choice." In reaching it's determination of whether the child's choice of parental custodian is, in fact, in his or her best interest:

"*** the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of the parties to the action and may order the parties and their minor children to submit to medical, psychological, and psychiatric examinations."

Appellee notes that the trial court is under no duty to order any investigation or tests. *Stone v. Stone* (1983), 9 Ohio App. 3d 6. *Stone, supra,* states that "[t]he decision to order an investigation *** prior to ordering a change of custody is within the sound discretion of the trial court ***." *Id.* at second paragraph of the syllabus. The *Stone* court stated that, to determine whether a change of custody was in the best

interests of the child, the court should refer to R.C. 3109.04(C). This provision states that the court should look to the child's wishes (when over eleven years of age), as well as examining the child's interaction with parents and other persons with whom he or she might come in contact in the home, school, or community. Finally, the statute states that the court determine the mental and physical health of all of the person involved in the situation.

However, "After a thorough review of R.C. 3109.04, we can find no language which *requires* that professional testimony be presented on the issue of relative harm and advantages likely to be caused by a change of custody. In the absence of any statutory requirement for such testimony, the trial court is free to consider the facts which it deems to be relevant and to make those findings which in its sound discretion appear to be reasonable and in the best interest of the child." *Stone,* at 11. (Emphasis in original.)

The question before this court is therefore whether the trial court abused its discretion when, in light of the facts present in this case, it failed to order home study, psychological and physical testing. At the beginning of the August 21, 1989 hearing, appellants vociferously requested that the court require further investigation, to which the trial court replied "We will have a hearing now and I will determine now, whether I want to have a home study done."

Subsequent to this pronouncement, appellant presented testimony which indicated that appellee had been charged with DUI; had had his license suspended; had, at least on one occasion, been drinking in the car in the child's presence; and used cocaine; and had caused the child to spend a large amount of time with her relatives, rather than at home. Further, the evidence exists that the child was molested during one such stay with her relatives.

The record also indicates questions as to the relationships between appellant and her daughter in relation to visitation. Apparently, the child has been undergoing some type of counseling as a result of the change of custody and the resultant conflicts that it has generated between her and her mother.

The trial court, after the first day of hearings, ordered that appellee be tested for cocaine use (a test that proved negative.) However, he ordered no other psychological or physical evaluations of any of the parties. Moreover, no home study was ordered to investigate the environment into which the child would be going.

After consideration of all of these factors, this court finds that the trial court's grant of the motion for a change of custody, in light of all of the questions inherent in the case *sub judice,* without further investigation, is both arbitrary and unreasonable. Consequently, this court "' will return this case to the trial court in order that further investigation of the suitability of the change of custody can be undertaken. Appellant's third assignment has merit.

Appellant's final assignment of error states that the trial court erred in ordering a change of custody when the appellee failed to sustain the burden of proof required under R.C. 3109.04(B)(1)(C). R.C. 3109.04(B) posits reasons for which a court will grant a change of custody. These reasons include scenarios in which both parties agree to the change, where the child has become integrated into the home of the non-custodial spouse, and under R. C. 3109.04(B)(1)(C), where the child's present environment significantly endangers her physical, mental, or moral well being. Appellant asserts that no such showing of significant endangerment was made here.

Appellant's reading of R.C. 3109.04(B) is accurate, but incomplete. If the trial court were to read R.C. 3109.04(B) as containing the sole method by which a change of custody could be granted, the courts would never be able to grant a change of custody based solely on the child's desire (after the age of twelve) to live with the other parent. Examined hypothetically, a child, living with a normal healthy parent who desires to live with another perfectly healthy parent would never be able to facilitate this change because (assuming the custodial parent does not agree to the change), the non-custodial parent would never be able to demonstrate significant present harm.

This reading of the statute is unduly narrow, as it fails to include R.C. 3109.04(A), which provides guidelines for ordering a change of custody when the child him or herself elects to make this change. The presence of this language renders appellant's argument incorrect as a matter of statutory interpretation.

Appellant's final assignment lacks merit.

Therefore, for the reasons stated in this opinion, the judgment of the trial court is reversed and this case is remanded for further investigation into whether the change of custody is in Angela Harris' best interest. Temporary custody shall continue to repose in appellee during the pendency of this investigation.

*Judgment reversed and cause remanded.*

O'NEILL, J, concurs.
COX, J., dissents.